U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR 23 2023

TONY R. MOORE, CLERK
BY_____
          DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * CRIMINAL NO. 6:23-cr-00063-01 |
| | * |
| VERSUS | * JUDGE JOSEPH |
| | * MAGISTRATE JUDGE WHITEHURST |
| DUSTY GUIDRY | * |

**STIPULATED FACTUAL BASIS FOR GUILTY PLEA**

NOW INTO COURT, comes the United States of America, by and through the undersigned attorneys for the United States Attorney for the Western District of Louisiana and the Public Integrity Section, Criminal Division, United States Department of Justice, and the defendant, DUSTY GUIDRY (hereinafter "GUIDRY" or "defendant"), represented by his undersigned counsel, Mr. Thomas L. Lorenzi, and for the purposes of providing the Court with a factual basis for a plea agreement pursuant to Rule 11(b)(3) of the Federal Rules of Criminal Procedure, hereby stipulate as follows:

**Count 1**
**Conspiracy to Commit an Offense**
**18 U.S.C. § 371**

GUIDRY stipulates and agrees that he and other individuals known to the United States agreed to commit the crime of Soliciting a Bribe as alleged in the Bill of Information, he knew of the unlawful purpose of the agreement and entered into the conspiracy willfully, and he and other co-conspirators committed overt acts in order to accomplish the object of the conspiracy. Furthermore, GUIDRY stipulates that at the time alleged in the Bill of Information, he was an agent for the 15th Judicial District

1

Attorney's Office, and that in a one-year period, the District Attorney's office received more than $10,000 in benefits under federal programs. GUIDRY stipulates that he corruptly solicited things of value from other persons and co-conspirators in connection with the 15th Judicial District Attorney's Office, and other District Attorney's Offices' pre-trial diversion programs. GUIDRY also stipulates that the series of transactions involved in his conspiracy to solicit bribes concerning programs receiving federal funds involved $5,000 or more.

Beginning at a time unknown but at least in or about January 2021, to in or about May 2022, GUIDRY was a contractor with and agent of Louisiana's 15th Judicial District Attorney's Office, which is located in the Western District of Louisiana. Specifically, GUIDRY served as an agent for the Pre-Trial Diversion Program of the 15th Judicial District Attorney's Office from on or about January 11, 2021, to on or about the May 9, 2022, and thus was a public official of that office. Beginning at a time prior to January 2021, and continuing until at least on or about December 10, 2021, GUIDRY also served as a coordinator for and employee of the Pre-Trial Diversion Program for the 19th Judicial District Attorney's Office. Beginning on or about February 7, 2017, and continuing until at least on or about December 10, 2021, GUIDRY was also the owner of a company called DJG Consulting.

GUIDRY stipulates and agrees that during the time-frame alleged in Count 1 of the Bill of Information he and other co-conspirators known to the United States did solicit and/or direct other co-conspirators to solicit individuals who had criminal charges pending in the 15th Judicial District, State of Louisiana, and elsewhere, to participate in the Pre-Trial Diversion Program offered by the 15th Judicial District by promising

favorable resolutions of pending felony and misdemeanor cases within the 15th Judicial District and elsewhere, including the eventual dismissal of criminal charges, in exchange for monies paid to vendors providing and/or claiming to provide pre-trial services.

GUIDRY and others known and unknown, including another public official, Public Official #1 ("PO-1"), at the 15th Judicial District Attorney's Office, used their positions within the Pre-Trial Diversion Program to facilitate criminal defendants' entry into the Pre-Trial Diversion Program, their assignment to certain classes and services, and their successful completion of the pre-trial diversion process. Once each defendant successfully completed the pre-trial diversion requirements assigned to them, their charges were dismissed.

Part of the pre-trial diversion process included taking online courses and/or participating in substance abuse treatment provided by business-persons or businesses, referred to as "vendors." At all times relevant, Vendor #1 and Vendor #2 had companies that provided online courses for District Attorney's Offices. Vendor #3 had a company that provided certain other services for pre-trial diversion defendants. Vendor #4 ran an evaluation service and a rehabilitation center that provided services to certain pre-trial diversion defendants. Defendants receiving services from and taking courses/programs provided by these vendors through the pre-trial diversion process such as Vendors #1 through #4, paid the vendors directly for those services and courses.

GUIDRY stipulates and agrees that Vendors #1 through #4 made payments directly to GUIDRY, either in his personal capacity or through his company DJG Consulting or Skyline Media. GUIDRY stipulates that Vendors #1 and #3 provided money and other tangible benefits to GUIDRY specifically due to GUIDRY's official

position at the 15th Judicial District Attorney's Office. GUIDRY is also aware that PO-1 received money and other tangible benefits from Vendor #1 and Vendor #3 due to PO-1's official position at the 15th Judicial District Attorney's Office.

GUIDRY stipulates that he and his co-conspirators, including PO-1, directed and caused to be directed defendants to take classes and services, and to pay specific vendors, namely Vendors #1 through #4, in order to complete their pre-trial diversion requirements. In exchange, GUIDRY and his co-conspirators, including PO-1, received payments and other tangible items from those vendors. In order to expand the number of defendants eligible for diversion programs, GUIDRY and PO-1 loosened and caused to be loosened the eligibility requirements of defendants into the pre-trial diversion programs, thereby increasing the amount of monies paid to the vendors. These vendors then split those increased profits and/or made payments to GUIDRY and his co-conspirators, including PO-1.

GUIDRY agreed to accept payments and things of value from Vendor #1 in exchange for causing and directing that Pre-Trial Diversion defendants be assigned to classes offered by Vendor #1. Specifically, Vendor #1 offered and GUIDRY accepted the purchase and payments toward a vehicle for GUIDRY and his wife. In order to conceal that GUIDRY was receiving these payments from Vendor #1, GUIDRY used Skyline Media to accept the payments. GUIDRY also directed Vendor #1 to provide the payments or things of value to his wife or her company in order to conceal the payments.

GUIDRY also agreed to accept payments and things of value from Vendor #2 in exchange for causing and directing that Pre-Trial Diversion defendants be assigned to classes offered by Vendor #2. Specifically, Vendor #2 offered and GUIDRY accepted 50%

of all revenue earned by Vendor #2, including 50% of the revenue Vendor #2 earned through the Pre-Trial Diversion Program in the 15th Judicial District.

GUIDRY agreed to accept payments and things of value from Vendor #3 in exchange for causing and directing that Pre-Trial Diversion defendants be assigned to services offered by Vendor #3, as described *infra* under Count 2.

Finally, GUIDRY agreed to accept payments and things of value from Vendor #4 in exchange for causing and directing that Pre-Trial Diversion defendants be assigned to services offered by Vendor #4. On or about October 2, 2021, DUSTY GUIDRY told Vendor #4 that he had used his official position to direct several Pre-Trial Diversion defendants to take courses sponsored by Vendor #4, at a price of several hundred dollars per defendant.

GUIDRY stipulates and agrees that he illegally received the solicited bribery payments during the timeframe alleged in Count 1 of the Bill of Information from the applicable vendors as follows:

Vendor #1:   approximately $163,556.80

Vendor #2:   approximately $193,700.00

Vendor #3:   approximately $76,000.00

Vendor #4:   approximately $306,240.91

**Count 2**
**Bribery - Programs Receiving Federal Funds (Soliciting a Bribe)**
**18 U.S.C. § 666(a)(1)(B); 18 U.S.C. § 2 (Aiding and Abetting)**

GUIDRY stipulates and agrees that on or about October 28, 2021, while acting as an agent for the 15th Judicial District Attorney's Office, he corruptly solicited and

received approximately $12,500 from Vendor #3 in exchange for using his official position to corruptly steer a Pre-Trial Diversion defendant to Vendor #3 for services. Specifically, GUIDRY stipulates that on or about the date referenced above, GUIDRY and PO-1, aided and abetted by each other, accepted bribe payments from Vendor #3. As part of the Pre-Trial Diversion Program, Vendor #3 received payments for classes and other requirements provided by the vendors from Pre-Trial Diversion defendants who had been assigned to Vendor #3's classes by GUIDRY and PO-1. In exchange for GUIDRY and PO-1 assigning defendants to Vendor #3's classes, Vendor #3 then made payments to GUIDRY and PO-1 using a portion of the money received from the defendants. One such defendant was T.W., a Pre-Trial Diversion defendant in the 15th Judicial District with pending charges in Lafayette Parish (15th Judicial District), and in St. Martin Parish (16th Judicial District). As part of his/her enrollment in Pre-Trial Diversion, GUIDRY and PO-1 directed that T.W. enroll in and take classes from Vendor #3. In addition to the class fees that Vendor #3 received from T.W., Vendor #3 also corruptly solicited and demanded $25,000 from T.W., a portion of which Vendor #3 agreed to provide to GUIDRY and PO-1. The financial investigation revealed that an individual known as D.H. provided $25,000 to Vendor #3 on behalf of T.W. During a phone conversation on October 28, 2021 between Vendor #3 and GUIDRY, Vendor #3 advised GUIDRY that he (Vendor #3) had the "25 cash"[1] from Pre-Trial Diversion defendant, T.W. Vendor #3 and GUIDRY then agreed to apportion the extorted $25,000 between GUIDRY, PO-1, and Vendor #3.

GUIDRY stipulates and agrees that, following this conversation on or about October 28, 2021, GUIDRY did receive a $12,500 cash payment from Vendor #3 related

---

[1] $25,000.

to the 15th Judicial District Pre-Trial Diversion Program defendant T.W. GUIDRY further stipulates and agrees that he provided a portion of that $12,500 cash payment to PO-1. GUIDRY stipulates and agrees that GUIDRY and PO-1 received those payments in exchange for their agreement to take official action to benefit Vendor #3, namely by requiring defendants including T.W. to take classes from Vendor #3 as part of the Pre-Trial Diversion Program.

## Count 3
### Conspiracy to Commit an Offense
### 18 U.S.C. § 371

GUIDRY stipulates and agrees that he and other individuals known to the United States agreed to commit the crime of Soliciting a Bribe as alleged in Count 3 of the Bill of Information, he knew of the unlawful purpose of the agreement and entered into the conspiracy willfully, and he and other co-conspirators committed overt acts in order to accomplish the object of the conspiracy. Furthermore, GUIDRY stipulates that at the time alleged in the Bill of Information, he was an agent for the Louisiana Department of Wildlife and Fisheries ("LDWF"), and that in a one-year period, the LDWF received more than $10,000 in benefits under federal program(s). GUIDRY stipulates that he corruptly solicited things of value from other persons and co-conspirators in connection with LDWF contracts. GUIDRY also stipulates that the series of transactions involved in his conspiracy to solicit bribes concerning programs receiving federal funds involved $5,000 or more.

GUIDRY stipulates and agrees that during the timeframe alleged in the Bill of Information, GUIDRY, an individual identified as Public Official #2 ("PO-2"), and others

known and unknown to the United States unlawfully steered and attempted to steer LDWF contracts to Vendor #1 in exchange for payments and other tangible benefits.

Beginning on or about May 1, 2019, and continuing until on or about December 10, 2021, GUIDRY served as a commissioner for the LDWF, a Department of the State of Louisiana. GUIDRY agrees that, during the relevant period, the LDWF was a state government agency that annually received in excess of $10,000 in federal benefits. During the course of this conspiracy, from on or about May 1, 2019 through on or about December 10, 2021, GUIDRY and other public officials known and unknown to the United States, including PO-2, attempted to secure contracts for online courses and other services with LDWF for Vendor #1's business(es). These contracts covered the provision of: (1) hunter's and boater's education classes; (2) courses to resolve LDWF violations; and (3) hunting and boating licenses. The provision of hunting and boating licenses was a service whereby Vendor #1 would use a third party, Vendor #5, to process online payments made by the public to purchase the licenses. Vendor #5 then gave a portion of its proceeds to Vendor #1.

In exchange for securing the contracts for Vendor #1, GUIDRY and PO-2 agreed with Vendor #1 to receive payments and/or other tangible benefits. The co-conspirators agreed that GUIDRY and PO-2 would receive a portion of the profits from the sale of the hunter's and boater's education classes as well as a portion of the profits that Vendor #1 made from the LDWF violations. Regarding the hunting and boating licenses, the co-conspirators agreed that, when Vendor #5 gave a portion of its proceeds to Vendor #1, Vendor #1 would split those proceeds with GUIDRY and PO-2. In similar fashion to the Pre-Trial Diversion Program(s), the government

appointees who helped secure those contracts for Vendor #1, including GUIDRY and PO-2, received personal financial benefits from Vendor #1.

On or about October 8, 2021, PO-2, acting on behalf of the LDWF, signed and entered into a contract with Vendor #1, agreeing that Vendor #1 would provide services to LDWF related to the provision of (1) hunters' and boaters' education classes; (2) courses to resolve LDWF violations, and (3) hunting and boating licenses. In return, Vendor #1 would receive a percentage of gross revenues earned through the provision of those services.

On or about November, 19, 2021, DUSTY GUIDRY, PO-2, and Vendor #1 met to discuss concealing and disguising the payment of the bribe proceeds. DUSTY GUIDRY, PO-2, and Vendor #1 agreed that Vendor #1 would refrain from paying the kickbacks owed to PO-2 until after PO-2's retirement from the LDWF. Further, DUSTY GUIDRY, PO-2, and Vendor #1 agreed that Vendor #1 would purchase an approximately $14,000 all-terrain vehicle for PO-2.

GUIDRY stipulates and agrees that during the course of the conspiracy alleged in Count 3 of the Bill of Information, he corruptly received approximately $89,072.53 from Vendor #1.

Respectfully submitted,

BRANDON B. BROWN
United States Attorney

Dated: 3/23/2023

MYERS P. NAMIE, LA Bar No. 29359
DANIEL J. McCOY, LA Bar No. 29334
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Telephone: (337) 262-6618

COREY AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

Dated: 3\23\2023

ROSALEEN T. O'GARA, AZ Bar No. 029512
TREVOR WILMOT, GA Bar No. 936961
Trial Attorneys, Public Integrity Section
U.S. Department of Justice
1301 New York Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-1412

Dated: 3/23/23

DUSTY GUIDRY
Defendant

Dated: 3/23/2023

THOMAS L. LORENZI, La. Bar No. 07724
Attorney at Law
518 Pujo Street
P.O. Box 3305
Lake Charles, LA 70602-3305

10